

FILED
CLERK, U.S. DISTRICT COURT

SEP - 5 2012

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

UNDER SEAL

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR12-00065 VAP |
| Plaintiff, | <u>I N D I C T M E N T</u> |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1349: Conspiracy to Commit Mail and Wire Fraud] |
| ANDREA RAQUEL RAMIREZ, aka "Andrea Parker," aka "Lisa Evans," CHRISTOPHER PAUL GEORGE, MICHAEL BRUCE BATES, aka "Michael Bruce Myers," aka "Robert Allen Castro," CRYSTAL TAIWANA BUCK, MICHAEL LEWIS PARKER, CATALINA DELEON, HAMID REZA SHALVIRI, aka "David Shalviri," YADIRA GARCIA PADILLA, MINDY SUE HOLT, IRIS MELISSA PELAYO, and ALBERT DIROBERTO, | [UNDER SEAL] |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. § 1341]

I. **INTRODUCTORY ALLEGATIONS**

Unless otherwise specified, at all times relevant to this Indictment:

1. 21st Century Real Estate Investment Corp. ("21st Century REI") was a California corporation and conducted its business from offices located in Rancho Cucamonga, California.

2. 21st Century Legal Services, Inc. ("21st Century Legal") was a California corporation and conducted its business from offices located in Rancho Cucamonga, California.

3. Transitional Corporation of America ("Transitional") was a California corporation and conducted its business from offices located in Rancho Cucamonga, California.

4. Fidelity National Legal Service, Inc. ("Fidelity") was a California corporation and conducted its business from offices located in Rancho Cucamonga, California.

5. East Coast Management, Inc. ("East Coast Management") was a California corporation and conducted its business from offices located in Rancho Cucamonga, California.

6. 21st Century REI, 21st Century Legal, Transitional, Fidelity, and East Coast Management (collectively, "21st Century") were controlled and operated by defendant ANDREA RAQUEL RAMIREZ ("RAMIREZ"), also known as ("aka") "Andrea Parker," aka "Lisa Evans."

7. Defendants CHRISTOPHER PAUL GEORGE ("GEORGE"), MICHAEL BRUCE BATES ("BATES"), aka "Michael Bruce Myers," aka "Robert

2

1  Allen Castro," CRYSTAL TAIWANA BUCK ("BUCK"), MICHAEL LEWIS
2  PARKER ("PARKER"), CATALINA DELEON ("DELEON"), HAMID REZA
3  SHALVIRI ("SHALVIRI"), aka "David Shalviri", YADIRA GARCIA
4  PADILLA ("PADILLA"), MINDY SUE HOLT ("HOLT"), IRIS MELISSA
5  PELAYO ("PELAYO"), and ALBERT DIROBERTO ("DIROBERTO") were
6  supervisors or employees of 21st Century.

## II. THE SCHEME TO DEFRAUD

8.  Beginning on a date unknown to the Grand Jury, but at least as early as in or about June 2008, and continuing to in or about December 2009, in San Bernardino County, within the Central District of California, and elsewhere, defendants RAMIREZ, GEORGE, BATES, BUCK, PARKER, DELEON, SHALVIRI, PADILLA, HOLT, PELAYO, and DIROBERTO, together with and aided and abetted by others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, devised, participated in, and executed a scheme to defraud victim homeowners as to material matters, by depriving victim homeowners of money and property, and by obtaining from victim homeowners money and property by means of materially false and fraudulent pretenses, representations, and promises and the concealment of material facts.

9.  The scheme to defraud was carried out, in substance, in the following ways, among others:

    a.  Between approximately June 2008, and December 2009, defendants, collectively acting through 21st Century, defrauded financially distressed homeowners by making false promises and guarantees regarding 21st Century's ability to negotiate loan modifications from the homeowners' mortgage

lenders, falsely representing that 21st Century was operating a loan modification program sponsored by the United States government, instructing homeowners to cease communication with their mortgage lenders and to cease making their mortgage payments. In total, defendants fraudulently obtained more than $7,000,000 from more than 4,000 victims.

### Organization of 21st Century

b.  21st Century was organized into a "sales" department and a "processing" department. The sales department was responsible for initial contact with financially distressed homeowners and for selling 21st Century's loan modification services. At times, sales employees would make initial contact with homeowners when an autodialing service retained by 21st Century dialed telephone numbers appearing on "lead" lists purchased by 21st Century, then connected homeowners who answered to sales employees. At other times, sales employees would make initial contact with homeowners when the homeowners responded to 21st Century's internet, newspaper, or mail advertising by calling 21st Century receptionists, who would forward such calls to the sales department. Defendants RAMIREZ and GEORGE managed the sales department. Defendants BUCK, PARKER, BATES, SHALVIRI, and DIROBERTO worked in the sales department of 21st Century.

c.  If a homeowner agreed to retain 21st Century, the sales department would inform the homeowner that a 21st Century representative would visit the homeowner at his or her home in person to obtain necessary signatures and complete paperwork. In truth, however, 21st Century would retain independent third-

party notaries to meet with homeowners. 21st Century would instruct the third-party notaries to inform the homeowners that they worked for 21st Century. Defendant PELAYO was responsible for managing the process of retaining and directing third-party notaries. Defendant PELAYO instructed subordinate 21st Century employees to use false names when speaking to notaries. Defendant PELAYO distributed instructions to notaries that they identify themselves to homeowners as 21st Century employees and that they not provide copies of the documents homeowners were signing to the homeowners.

       d.   21st Century's processing department was responsible for contacting homeowners' lenders and negotiating loan modifications. Defendants RAMIREZ, HOLT, and DELEON were responsible for managing processors. Defendant PADILLA worked in the processing department.

       e.   In addition to working in the sales department, defendant DIROBERTO was responsible for marketing at 21st Century. These responsibilities included creating a commercial for 21st Century and developing memoranda for 21st Century containing talking points to use in responding to negative publicity 21st Century received.

**False Statements to Financially Distressed Homeowners**

       f.   21st Century's advertising contained numerous materially false statements.

       g.   21st Century maintained various websites which contained false statements, including that 21st Century employed multiple attorneys who would negotiate loan modifications on behalf of homeowners. In truth, only one attorney was

5

affiliated with 21st Century, and that attorney rarely worked on homeowner files.

   h. These websites also contained false testimonials, purportedly from 21st Century customers who had obtained loan modifications through 21st Century with which they were satisfied. In truth, certain of the customers identified in such testimonials had not received loan modifications through 21st Century and were unsatisfied with 21st Century's performance.

   i. 21st Century distributed newspaper ads which falsely stated that 21st Century employed multiple attorneys and that attorneys would negotiate loan modifications for homeowners. In truth, only one attorney was affiliated with 21st Century, and he rarely worked on homeowner files.

   j. 21st Century sent mailings to financially distressed homeowners containing false statements. Certain mailings included claims that 21st Century had a "98% ratio of success" with loan modifications, and that the homeowner would receive a refund of the fees he or she paid to 21st Century if the loan modification was not accepted by the mortgage lender. In truth, 21st Century rarely was successful in obtaining loan modifications for homeowners, and rarely refunded fees to homeowners.

   k. Employees in the 21st Century's sales department, acting at the direction of, among others, defendant RAMIREZ, would make the following false statements, among others, when speaking to financially distressed homeowners:

6

    i. Guarantees that 21st Century could obtain specific interest rates and reduced mortgage payment amounts for the homeowner through loan modification;

    ii. Guarantees that 21st Century would refund any fees the homeowner paid to 21st Century if 21st Century was unable to obtain the promised loan modification;

    iii. Statements that 21st Century attorneys would negotiate a loan modification on behalf of the homeowner;

    iv. Statements that 21st Century was sponsored or otherwise supported by the United States government in its loan modification business;

    v. Statements that 21st Century would use fees paid by financially distressed homeowners to pay those homeowners' mortgage lenders on behalf of the homeowners.

    vi. Statements that financially distressed homeowners were "preapproved" or "prequalified" for loan modifications.

  l. In truth,

    i. 21st Century employees could not know what loan modifications were possible for any specific homeowner without first speaking to that homeowner's mortgage lender, and 21st Century customers who did receive modifications usually received worse terms than those promised by 21st Century;

    ii. 21st Century rarely refunded customer fees, even where they were unsuccessful in obtaining loan modifications;

    iii. Only one attorney was affiliated with 21st Century, and he rarely worked on homeowner files;

    iv. 21st Century was not sponsored or otherwise supported by the United States government; and

    v. 21st Century did not use fees paid by homeowners to make mortgage payments to lenders on behalf of homeowners.

### False Statements by Processing Department

 m. After a sales department employee persuaded a financially distressed homeowner to retain 21st Century, that homeowner's file would be sent to 21st Century's processing department, nominally for the purpose of negotiating a loan modification on behalf of the homeowner.

 n. In truth, 21st Century employed too few processors to keep pace with the number of homeowners they were soliciting. As a result, many homeowner files sat unattended for long periods of time after the homeowner retained 21st Century.

 o. Defendant RAMIREZ directed processors to close homeowner files that were more than six months old, regardless of whether 21st Century had obtained a loan modification for that homeowner.

 p. When 21st Century did submit applications to lenders for the purpose of obtaining loan modifications, those applications frequently included false statements. Acting at the direction of defendants RAMIREZ, DELEON, HOLT, and PADILLA, employees in 21st Century's processing department would, among other things:

    i. Submit forged rental agreements to lenders for the purpose of creating the impression that homeowners were

receiving rental income for their properties when, in fact, no such renters existed; and

    ii. Make false statements regarding the homeowner seeking a modification to create an exaggerated impression of financial hardship.

  q. 21st Century employees made these false statements to financial institutions, many of which either received funds under United States government programs, such as the Troubled Asset Relief Program ("TARP") or had agreed to otherwise participate in TARP, with the intent to defraud the financial institutions. For example, the defendants submitted fraudulent loan modification documents to TARP fund recipient Wells Fargo Bank.

### Use of Grant Deeds

  r. In certain instances, 21st Century employees, including defendant SHALVIRI, would persuade financially distressed homeowners to execute a grant deed conveying a partial interest in the homeowner's property to defendant SHALVIRI or to other individuals affiliated with 21st Century.

  s. Defendant SHALVIRI would inform the homeowner that conveying an interest in his or her property to defendant SHALVIRI or to other individuals affiliated with 21st Century converted the status of the homeowner to a tenant. Defendant SHALVIRI would inform the homeowner that a tenant cannot be evicted.

  t. Defendant SHALVIRI would then send monthly rent invoices for an amount equal to a promised post-loan modification mortgage payment to the homeowner, which the

homeowner would pay directly to defendant SHALVIRI. Defendant SHALVIRI would inform the homeowner he would use these payments to pay the homeowner's monthly mortgage payments to the lender. Defendant SHALVIRI would not do so, however.

**Use of Bankruptcy Petitions**

u. In certain instances, 21st Century persuaded financially distressed homeowners that it was necessary to file a bankruptcy petition in order to forestall an impending foreclosure sale of their home.

v. In such instances, defendant BATES or another individual, neither of whom were licensed to practice law in the state of California at any time relevant to this Indictment, would prepare and file a bankruptcy petition on behalf of the homeowner. The bankruptcy petition typically would indicate that, despite the assistance of defendant BATES or the other individual, the homeowner was representing himself or herself in the bankruptcy proceeding.

w. 21st Century employees would advise the homeowners that they did not need to attend bankruptcy court proceedings or respond to correspondence from the bankruptcy court because they were represented by 21st Century.

x. These bankruptcy petitions were often dismissed for failure to appear at necessary hearings or other procedural flaws.

y. 21st Century employees would continue to tell the homeowner that their bankruptcy was pending and therefore the homeowner could not be evicted even after the petition had been dismissed.

**Relocation of 21st Century**

z. On or about September 23, 2009, law enforcement agents executed search warrants for several offices in Rancho Cucamonga, California used by 21st Century. After the search, defendants ceased using the office space in Rancho Cucamonga, California to conduct 21st Century's business.

aa. Defendants RAMIREZ, BUCK, DELEON, and PADILLA, and others known and unknown to the Grand Jury relocated operations of 21st Century to various hotel rooms in Southern California. These employees continued to offer their loan modification services to financially distressed homeowners from these hotel rooms.

bb. 21st Century employees continuing to work after law enforcement agents executed search warrants represented to victim homeowners that 21st Century, then operating as Fidelity, was located in Las Vegas, Nevada. These employees used prepaid cellular telephones with Las Vegas area codes to contact financially distressed homeowners, provided a mailing address in Las Vegas, Nevada, and had mail forwarded from a commercial mailbox in Las Vegas, Nevada to their locations in San Bernardino County.

**Victim Homeowner L.B.**

cc. Defendants RAMIREZ and SHALVIRI contacted victim homeowner L.B. by telephone in or about February 2008. At the time, L.B. had owned her home in Compton, California for approximately 35 years, and was behind on her mortgage payments.

dd. Defendants RAMIREZ and SHALVIRI promised victim homeowner L.B. that 21st Century could reduce her monthly

mortgage payments from approximately $2,526 to $1,550 through a loan modification.

ee. Defendants RAMIREZ and SHALVIRI told L.B. that 21st Century had received money to help homeowners lower their mortgage payments, and they could use this money to help reduce her payments.

ff. Defendants RAMIREZ and SHALVIRI instructed victim homeowner L.B. to cease making mortgage payments to her lender, and instead to make monthly payments to 21st Century in the amount of the reduced monthly payment they promised to obtain for her. Defendants RAMIREZ and SHALVIRI promised L.B. that they would use these monthly payments to pay her lender, and that they would pay the difference between her current mortgage payment amount and the amount they promised her with funds obtained from other sources. In truth, 21st Century never made any payments to L.B.'s lender.

gg. Defendant RAMIREZ told L.B. that she would have to file for bankruptcy to forestall a foreclosure proceeding on L.B.'s home while 21st Century sought a loan modification. L.B. paid $500 to 21st Century for this bankruptcy filing, which was prepared and filed by defendant BATES on or about May 26, 2009.

hh. In July 2009, L.B.'s lender filed an unlawful detainer action against L.B. in California Superior Court seeking to evict L.B. from her home. When L.B. informed defendants RAMIREZ and SHALVIRI of this, they informed her that the unlawful detainer action could not proceed against her because her bankruptcy petition was pending. In truth, the United States Bankruptcy Court for the Central District of

California had dismissed L.B.'s bankruptcy petition on or about May 29, 2009, three days after it was filed.

    ii. L.B.'s lender foreclosed on her home, and she was evicted in or about September 2009. 21st Century did not obtain a loan modification for her. L.B. paid a total of approximately $5,150 to 21st Century, and never received a refund.

**Victim Homeowner S.L.**

    jj. Defendant SHALVIRI contacted victim homeowner S.L. in or about January 2009. At that time, S.L had owned his home in Inglewood, California for approximately ten years.

    kk. Defendant SHALVIRI told victim homeowner S.L. that defendant SHALVIRI worked with a team of lawyers who could stop S.L.'s lender from foreclosing on his home. Defendant SHALVIRI told S.L. that S.L. would have to file for bankruptcy in order to forestall the foreclosure.

    ll. 21st Century prepared bankruptcy documents and sent them to victim homeowner S.L. 21st Century filed them on his behalf on or about May 27, 2009. The bankruptcy petition indicated that S.L. was acting in a *pro se* capacity. Defendant SHALVIRI told S.L. that he would not have to deal with the bankruptcy court during the bankruptcy proceedings because 21st Century would represent him. On or about July 20, 2009, the United States Bankruptcy Court for the Central District of California dismissed S.L.'s bankruptcy petition due to his failure to appear at a creditor meeting.

    mm. Defendant SHALVIRI instructed S.L. to execute a grant deed giving "Robert Castro" an ownership interest in S.L.'s home. S.L. did so. In or about June 2009, the grant

13

1  deed was transferred to defendant SHALVIRI. Defendant BATES was
2  listed on the grant deed as "attorney in fact."
3      nn. Defendant SHALVIRI began sending a "Residential
4  Lease Monthly Invoice" to victim homeowner S.L. for $1,575 per
5  month, which S.L. paid each month with personal checks made out
6  to defendant SHALVIRI. Defendant SHALVIRI told S.L. that the
7  money would be used to pay for legal services and for a portion
8  of his monthly mortgage payments. In truth, no attorney worked
9  on S.L.'s loan modification, and 21st Century did not pay any
10 money to S.L.'s lender on his behalf.
11     oo. Victim homeowner S.L. received letters from his
12 lender concerning his delinquent account. Defendant SHALVIRI
13 instructed S.L. not to respond to those letters because 21st
14 Century was representing him, and assured him that everything
15 was fine. Defendant SHALVIRI told S.L. that because S.L. was
16 defendant SHALVIRI's "tenant," he could not be evicted from his
17 home.
18     pp. 21st Century never obtained a loan modification
19 on behalf of S.L. In or about November 2009, S.L. was evicted
20 from his home. S.L. never received a refund from 21st Century.
21 **Victim Homeowner Y.S.**
22     qq. Defendant BUCK contacted victim homeowner Y.S. by
23 telephone in or about November 2008. At that time, Y.S. owned
24 her home in Newark, New Jersey.
25     rr. Defendant BUCK told victim homeowner Y.S. that
26 21st Century was working through a government loan modification
27 program approved by President Obama, and that Y.S. was pre-
28 approved for a loan modification through this program. In

truth, 21st Century was not sponsored or otherwise supported by the United States government, and Y.S.'s mortgage lender had not pre-approved her for a loan modification, and, when ultimately contacted by Y.S., Y.S.'s mortgage lender informed her that it did not do loan modifications at all.

ss. Defendant BUCK instructed victim homeowner Y.S. not to answer calls from her lender, or to communicate with her lender.

tt. Although victim homeowner Y.S. was current on her mortgage payments at the time, defendant BUCK instructed her to stop making her mortgage payments.

uu. Defendant BUCK sent a letter to victim homeowner Y.S. on or about December 9, 2008, instructing Y.S. to send three post-dated checks in the amount of $500 each to 21st Century. 21st Century sent a notary to Y.S.'s home to collect these checks from her.

vv. 21st Century submitted a loan modification request to victim homeowner Y.S.'s lender that included a forged rental agreement indicating that Y.S. had a tenant who lived in her home and was paying rent to her. In truth, Y.S. had no tenant and was not receiving rent.

ww. 21st Century failed to secure a loan modification for victim homeowner Y.S. Y.S. independently negotiated an agreement with her lender that allowed her to keep her home. 21st Century never refunded any of the fees Y.S. paid.

III. THE USE OF MAILS AND INTERSTATE CARRIERS

10. On or about the dates set forth below, within the Central District of California and elsewhere, defendants

15

RAMIREZ, GEORGE, BATES, BUCK, PARKER, DELEON, SHALVIRI, PADILLA, HOLT, PELAYO, and DIROBERTO, assisted by others known and unknown to the Grand Jury, for the purpose of carrying out the scheme to defraud described above, caused the following items to be placed in an authorized depository for mail matter to be delivered by the United States Postal Service, and to be deposited with and delivered by a commercial interstate carrier, according to the directions thereon:

| COUNT | DATE | ITEM |
|---|---|---|
| ONE | 2/28/2009 | Check from victim L.B., dated 2/28/2009, for $3,100 paid to defendant SHALVIRI sent via U.S. mail from victim L.B. in Compton, California, to defendant SHALVIRI in Montebello, California. |
| TWO | 4/18/2009 | Check from victim L.B., dated 4/18/2009, for $1,550 paid to defendant SHALVIRI sent via U.S. mail from victim L.B. in Compton, California, to defendant SHALVIRI in Montebello, California. |
| THREE | 2/1/2009 | Residential Lease Monthly Invoice, dated 2/1/2009, from defendant SHALVIRI in Montebello, California, to victim S.L. in Inglewood, California. |
| FOUR | 2/6/2009 | Check from victim S.L., dated 2/6/2009, for $1,575 paid to defendant SHALVIRI via U.S. Mail from victim S.L. in Inglewood, California, to defendant SHALVIRI in Montebello, California. |
| FIVE | 12/9/2008 | Letter dated 12/9/2008 sent via U.S. Mail from defendant BUCK in Rancho Cucamonga, California, to victim Y.S. in Newark, New Jersey. |

COUNTS SIX THROUGH EIGHT

[18 U.S.C. §§ 1343]

A. SCHEME TO DEFRAUD

11. The Grand Jury hereby realleges and incorporates by reference paragraphs one through nine of this Indictment.

B. USE OF THE WIRES

12. On or about the following dates, within the Central District of California and elsewhere, defendants RAMIREZ, GEORGE, BATES, BUCK, PARKER, DELEON, SHALVIRI, PADILLA, HOLT, PELAYO, and DIROBERTO, assisted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | ITEM |
|---|---|---|
| SIX | 11/25/2008 | Telephone call between defendant BUCK in Rancho Cucamonga, California and victim Y.S. in Newark, New Jersey. |
| SEVEN | 4/8/2009 | Facsimile from 21st Century employee W.R. in Rancho Cucamonga, California to Everhome Mortgage in Florida. |
| EIGHT | 4/28/2009 | Facsimile from victim Y.S. in Newark, New Jersey to 21st Century employee in Rancho Cucamonga, California. |

COUNT NINE

[18 U.S.C. § 1349]

A.  INTRODUCTORY ALLEGATIONS

13.  The Grand Jury hereby realleges and incorporates by reference paragraphs one through seven of this Indictment.

B.  OBJECTS OF THE CONSPIRACY

14.  Beginning on a date unknown to the Grand Jury, but at least as early as in or about June 2008, and continuing until in or about December 2009, in San Bernardino County, within the Central District of California, and elsewhere, defendants RAMIREZ, GEORGE, BATES, BUCK, PARKER, DELEON, SHALVIRI, PADILLA, HOLT, PELAYO, AND DIROBERTO, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed with each other to commit the following offenses against the United States:

   a.  Mail fraud, in violation of Title 18, United States Code, Section 1341; and

   b.  Wire fraud, in violation of Title 18, United States Code, Section 1343.

//
//
/
//
//
//
//
//
//

C. THE MANNER AND MEANS OF THE CONSPIRACY

15. The Grand Jury hereby realleges and incorporates by reference paragraphs eight and nine of this Indictment.

A TRUE BILL

_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

*[signature]*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

ANTOINE F. RAPHAEL
Assistant United States Attorney
Chief, Riverside Branch Office

THOMAS D. STOUT
Assistant United States Attorney
Riverside Branch Office